Bland, Chancellor.
The exceptions to the auditor’s report standing ready for hearing, and the solicitors of the parties having been heard, the proceedings were read and considered.
I take it to be a well settled rule of this court, that on a creditor’s bill, the decree for a sale, in the usual general terms, virtually and necessarily establishes the claims of all the originally suing creditors, unless some of them should, by the decree itself, be specially excepted ; since it is very clear, that no sale can be ordered, but to pay some one or more debts which have been established to the satisfaction of the Chancellor, (a) But such a decree only establishes the claim of the plaintiff as a debt due from the estate of the deceased debtor, without prejudice to third persons, and consequently, if any others, who may have been allowed to come in as parties to the suit, can shew fraud or any other circumstance by which it shall appear that the debt, as so far established, ought not to be permitted to stand in the way of their interests, it maybe then shewn and taken advantage of; because the introduction and reliance upon any such new and collateral matter is not in any way incompatible with an admission of the stability of any of those points which had been previously adjudicated upon and determined by the decree.
But no such new matter having been advanced and relied upon, as a cause why these claims, Nos. 1, 2 and 5, should be rejected altogether, or postponed in favour of, and to make way for the satisfaction of the claims of these excepting creditors, they must stand as having been established against the estate of the deceased. And the claim No. 1, as inclusive of No. 2, having been secured by the deed of trust, in the manner set forth by the bill, must be allowed a preference of satisfaction out of the proceeds of the trust fund; since it has not been alleged or shewn that there was any infirmity in the deed of trust as regarded other creditors, not provided for by it; or that this was not, in fact, one of the debts intended to be secured by it. The proceeds of the trust fund, must therefore be first applied in satisfaction of the claim No. 1, as including No. 2 ; and the surplus, if any, together with the proceeds of the other portion of the deceased’s estate to *39 the satisfaction of claim No. 5, and of all others which may be established in due course of administration.
It is admitted, that the plaintiff Welch’s claim No. 3, is one which has not been set forth and demanded by the bill; and therefore, that it cannot be deemed to have been established by the decree; even supposing that it might be introduced after the decree, as an addition to the amount so claimed by him. But a plaintiff cannot be allowed to split up, and multiply his causes of action; nor to introduce any other claim, and call the court back to adjudicate upon it, after a decree has been passed, at his instance, by which it might have been embraced had it been set forth and demanded in his bill. (b) For in equity, as at law, where a plaintiff has several claims, the satisfaction of all of which might be demanded in one suit, or a satisfaction of each of which might be demanded by a separate suit, he may, at his election, seek satisfaction by one, or by several suits, (c) But if, by a creditor’s bill, he sets forth and asks satisfaction of only one of his claims, he must, thereby, be taken to have waived all right to demand satisfaction in that suit of any other claim which he then had and might have brought before the court. Under such circumstances, therefore, by analogy to the rules prescribed for executors and administrators, (d) the court will proceed to distribute the assets among the creditors of the deceased, to the exclusion of any such claims as the plaintiffs may so introduce as additions to those specified in their bill, and which additional claims had been negligently omitted, or improperly withheld.
But in laying down this rule, intended to impose upon a plaintiff an obligation to take seasonable care of all his rights, and to prevent him from vexatiously increasing the expense, and retarding the progress of a suit, instituted for the benefit of others as well as himself, I would not be understood as going so far as to determine, that it should have the effect of depriving him of any other mode of relief to which he may have recourse. Such omitted claim may be founded on a judgment, as in this instance of claim No. 3, or upon a mortgage, in which case, I am not now prepared to say, that its not having been demanded in the bill would have the effect of depriving the claimant of his general or specific lien.
*40 Whereupon, it is Ordered, that the exceptions to the claims Nos. 1, 2 and 5, are hereby overruled; but, that in so far as the said exceptions are directed against claim No. 3, exclusively, they are sustained, and that claim is hereby rejected; but without prejudice. And the auditor, in making a distribution of the trust fund, and of the surplus of that fund, together with the proceeds of the deceased’s estate, will be governed by the principles herein before laid down and explained.
After which, some other claims were brought in, among which was one filed on the 11th of June, 1829, by Joseph Jf. Stockett, administrator de bonis non, with the will annexed of John Stockett, deceased, for the sum of $300, admitted to be due by the deed of trust, with interest from the 12th of June, 1812. To the allowance of which, the plaintiff Welch objected, that it was not proved in the manner required by law, and the practice of the court; and he also plead the act of limitations as a bar; and relied on the lapse of time as evidence of payment.
10th August, 1829.
Bland, Chancellor.
This case having been again brought before the court to obtain an order for a final audit; and the solicitors of the parties having submitted the matter, so far as they were concerned, on notes, the proceedings were read and considered.
The order of the 16th of March last, having made only a partial adjustment of this case preparatory to a 'final audit, it remains, in connection with that order, to dispose of the residue of the now controverted or neglected claims which have been heretofore introduced into the case.
The claim of Joseph Jf. Stockett, as administrator de 'bonis non of John Stockett, deceased, stated in the auditor’s report filed on the 4th of February last, as claim No. 7, has been admitted, provided for, and secured by the deed of trust mentioned in the bill; and therefore, must now be permitted to take the grade and stand of preference, allowed to all the other - claims coming in under that deed; unless it can be pushed from its position by one or other of the points pressed against it. It is alleged to have been paid. There is, however, no proof of any payment, and therefore, that point must be thrown aside, as having entirely failed for the direct purpose for which it was introduced. But it is said to afford a safe and just means of urging on another point; and that is, the lapse of time as evidence of payment.
*41 The presumption of payment, arising from lapse of time, is a point of defence, which may be pressed with effect, either at law or in equity, where it can be made to bear upon the asserted claim; but, in this instance, the claim is sustained by the deed of trust; and if the lapse of time could have been used at all, as a point of defence, it should have been presented in some form substantially as a plea of limitations; and in that way it has been presented; but it has been offered entirely too late.
The filing of a creditor’s bill in England, it it said, enures to the benefit of all creditors who may come in under the decree, so as to take their claims out of the operation of the statute of limitation, from the day of filing the bill, (e) But here no such presumption or fiction has been adopted. As to all creditors coming in after the institution of the suit, or under the decree, the day of filing the petition to be admitted as a creditor, or the day of filing the voucher or evidence of the claim is considered as the commencement of the suit as to such creditor; and as that day on which the further running of the statute of limitations as against his claim is to cease. And where a claim is made in the ordinary mode by bill, and the defendant, by his answer, in any manner contests it, without relying on the statute of limitations, he cannot be permitted to resort to that defence after having thus tacitly-waived it.
The principle of this practice is applied wherever it can be brought properly to bear upon the course of proceedings. A creditor who comes, or is brought in, as in this instance, under a creditor’s bill, is considered in many respects as a co-plaintiff, from the time his claim has been filed or brought before the court, and all other creditors, as well as the original defendants, with whose interests such claim may come in conflict, may oppose it, in any legal manner they may deem most available. In doing so, the creditor, who, by reason of his claim, has been invited, or summoned to appear before the court, and the party who contests it, assume the relative positions of plaintiff and defendant; or, as they may be called, in contradistinction from the original plaintiff and defendant, that of claimant and opponent; and as standing in those relative positions, the controversy between them has always been considered. In this view of the matter, it has been long established, that if an opponent means so to defend his interests, *42 he must put in the plea, or rely upon the statute of limitations in due season; for, if he suffers the proper stage of the case to pass by, or if he himself does, or stands by and suffers an act to be done, which necessarily implies a waiver of that defence on his part, he cannot afterwards have recourse to it. This, hpwever, is to be understood of the proceedings of the parties to the case, and not of the acts of any of the officers of the court. The auditor has always been considered as the mére ministerial officer of the court, whose powers and duties extend no farther than to prepare and put in order the materials upon which the Chancellor is to adjudicate. Hence, no statement, report, or act of the auditor can affect the rights or interests of a party, plaintiff, or defendant, claimant, or opponent, (f)
Upon this ground it has always been held, that the statute of limitations may be presented as a defence, at any time after the claim has been filed or brought before the court, either befóre the case has gone to the auditor, or alter he has made a report on it. (g) *43 But where, without specially relying on the statute of limitations, a defence was taken against the claim on the 10th of February, 1818, and witnesses were produced and proceedings had; and then on the 10th of December, 1819, a plea of the statute of limitations was filed and relied on. It was held, that the plea was offered too late, and it was accordingly rejected. (h)
*44 In this case the opponent Welch, hy his bill, filed on the 2d of August, 1827, averred that this claim, which he called into court, had been paid; and the claimant StocJcett, by his answer, filed on the 19th of October, 1827, denied that allegation. The parties were thus at issue upon the fact of payment, which the opponent has failed to sustain by any proof whatever. After which, and all the intermediate proceedings in the case, it certainly could not-now be in order, or consistent with a well regulated administration of justice to permit this opponent to abandon that issue, and so late as the 29th of June last, to make up another issue, and to present a new defence against this claim, founded on the statute of limitations. (i)
*45 Upon the whole, I am of opinion, that the opposition to this claim of Joseph JV*. Stockett as administrator is altogether untenable ; and that therefore it must be allowed to take its stand as one of the preferred claims provided for by the deed of trust.
The claims of Saunders’ representatives, and all others not now authenticated, or 'admitted according to the course of the court, must be altogether rejected.
Whereupon it is Ordered, that this case be, and the same is hereby referred to the auditor, with directions to state an account accordingly.
In obedience to these orders the auditor made a report, which was confirmed on the 14th of August, 1829.

 Strike’s case, 1 Bland, 70 ; Williamson v. Wilson, 1 Bland, 441.

6) Strike’s case, 1 Bland, 95.

 Dickenson v. Harrison, 2 Exch. Rep. 105.

 1785, ch. 80, s. 7; 1802, ch. 101, s. 8; 1798, ch. 101, sub ch. 8, s. 13, 14 and 15.

 Sterndale v. Hankinson, 2 Cond. Chan. Rep. 188.

 Dorsey v. Hammond, 1 Bland, 469; Fenwick v. Gibbes, 2 Desau, 635.

 The State v. Brookes. — This bill, filed on the 24th of April, 1793, by Luther Martin, the attorney-general on behalf of the state, sets forth, that John Beall was appointed collector of the taxes for Prince George’s county, and as such, gave bond with Humphrey Belt and Benjamin Brookes, as his sureties; that Beall laving failed to pay over the money he had collected, suits were brought on his bond, and judgment obtained against Benjamin Brookes for a considerable amount, which was then due. That afterwards, Brookes died, having previously, by his will, devised his real estate to his son Robert in tail, remainder to his son Benjamin in tail, subject to a right given to his wife and daughter, as described in the will, of using it and taking a certain portion of the rents and profits thereof; by which will, he appointed his wife Sarah and his brother Henry his executors. The bill iurther states, that the testator’s personal estate was insufficient to pay his debts. Prayer, that the executors might account for the personalty; and that, if it should be insufficient, the real estate might be sold to pay this debt due by the deceased to the state.
The executors and the devisee Robert Brookes, were the' only persons made defendants.
9th March, 1796. — Hanson, Chancellor. — The claim of the state aforesaid against the deceased, and the insufficiency of the personal estate to discharge it being established to the Chancellor’s satisfaction, and it appearing reasonable under all circumstances, that the land in the bill and answers mentioned, which hath been devised by the deceased to the defendant Robert Brookes, be sold for the payment of the just debts of the deceased. Decreed, that they be sold, &c. &.c. and that the trustee give notice to the creditors of the deceased to bring in their claims, &c.
A sale was accordingly made, and before it was reported, the defendant Sarah petitioned that it might not be ratified; because of the objections therein stated. On the 2d of May, 1796, an order was passed appointing a day for hearing, and allowing the parties to take testimony in the usual manner.
*43 9th June, 1796. — Hanson, Chancellor. — The Chancellor has considered the petition of Sarah Brookes for setting aside the sale, made by the trustee of the real estate of Benjamin Brookes, and the depositions returned, agreeably to the order for that purpose made, and the arguments of the counsel for General Benjamin Brookes.
He finds nothing reprehensible in the conduct of the purchaser; and nothing which can be deemed fraudulent has been proven ; but it is clearly established by the depositions, that the sale was affected by suggestions made at the time of the sale, that thereby a person was prevented from bidding, -and the land hath been sold for a considerably less price than otherwise it might have commanded. It hath always been a rule with the Chancellor to impress the public with an idea, that no device or contrivance used at a sale, which requires his ratification, shall be of any avail. It is essential to the administration of justice in this court, that this rule be inviolably observed. Where property appears to have been sold under its value, the slightest circumstance of fraud, combination, or management, ought to be deemed sufficient, on the application of a party interested, to set aside the sale. As those things are of a nature to elude detection, where little is proved, a great deal may fairly be presumed. In the present case, indeed, there does not appear to have been any fraud or combination; but if a sale, under such circumstances, should be ratified, the encouragement which the precedent might afford, would probably operate not only against the interest of the parties concerned in sales, but against substantial justice and the reputation of this tribunal.
It is therefore Ordered, that the sale made by William Marbury, trustee of the said real estate of Benjamin Brookes deceased to General Benjamin Brookes, as stated in his report, this day returned, be vacated and set aside; and that the bond or bonds taken by the said trustee, on the said sale, be cancelled or delivered up to the said General Brookes; and that the said trustee proceed to sell again the said property on the terms and in the manner prescribed by the original decree in this cause; and that in every thing, except giving a new bond, before, at, and after the sale, he act as by the said decree prescribed.
On the 30lh of July, 1796, a new'sale having been made and reported, was after-wards absolutely ratified and confirmed.
The auditor, on the 18th of February, 1803, made a report, in which, among other things, he says that Stephen West’s claim, account Wo. 6, commences early in the year 1756, and is continued as an open account until 1776, in which time, and for ten years afterwards, there does not appear to have been any settlement between the parties; and the affidavit of the executrix of Stephen West appears to be defective ; in addition to these objections the solicitor for the executrix of Benjamin Brookes’ has filed exceptions to this claim herewith returned. That Benjamin Oden’s claim, account Wo. 9, is a judgment against the executrix, which has no proof except the transcript of said judgment.
Sarah Brookes, widow of Benjamin Brookes, in behalf of herself and Robert

 McMechen v. Chase, 1 Bland, 85 n.
*44 Brookes and Sophia Brookes her children, both infants under the age of twenty-one years, objects to the allowance by the auditor of the claim against the said real estate by the executrix of Stephen West, for the following reasons: 1st, it appears that the account commences with a charge of £28 19s. 0d. on the 6th of April, 1756, which note is also exhibited, and is without seal. That although credits are given as far as the year 1776, yet that the account stops there, and no steps appear to have been taken to obtain payment of the balance, if any was due; which from the length of time furnishes a strong presumption that no balance was due; and she pleads and relies on the length of time a3 a bar to the said claim. 2d. That a suit is now pending in Prince George’s county court, against the said Sarah Brookes as executrix of Benjamin Brookes for the same claim, to which she has pleaded the act of limitations, and which has been laid before the auditor, under the act of 1785, ch. 80, and is not yet reported on, which she is ready to make appear; and 3d, That the probate of H. West, the executrix is not sufficient, and not such as the law requires.
27th May, 1803. — Hanson; Chancellor. — Ordered, that the Chancellor, on application, at any time after the first day of October next, will proceed to decide on the claim of Stephen West’s executor against Benjamin Brookes deceased; provided a copy of this order be served on Hannah West, or Richard Ridgely, her solicitor, in case she cannot conveniently be therewith served, before the first day of July next. Ordered likewise, that depositions taken before a single magistrate, on two days notice, in case it can conveniently be served, or without notice, in case it cannot be so served, shall be received as evidence on the trial of the said claim.
After which the case was again brought before the court as to other claims.
18ih July, 1803. — Hanson, Chancellor. — Let the auditor state the proportions which each creditor of Benjamin Brookes is entitled to of the money arising from the sale of the real estate of said Brookes, deducting the commission of £75, and costs of suit, the state being entitled to a preference. He is to state the proportion of Stephen West, although his claim is disputed; the object of stating the proportions being, that an order may be passed for paying each claimant, except the said West, immediately. The said West’s claim is, agreeably to the order of 27th May, 1803, to be decided on after the first day of October next.

 Kemp v. Mackrill, 2 Ves. 580.
*45 After which the case was again called up for hearing upon the exceptions.
12i/j October, 1S03. — Hanson, Chancellor. — The Chancellor having appointed this day for deciding on the claims of Benjamin Oden, and of Stephen West’s executrix against the estate of Benjamin Brookes deceased, and the counsel on each side having submitted the questions without argument, the Chancellor proceeded to examine the papers and vouchers relative to the said claim.
There, appears no reason wherefore the Chancellor should differ from the auditor relative to West’s claim; It is therefore wholly rejected. As to the claim of Oden, nothing appears Wanted except his affidavit. The opposite counsel, however, Mr. William Kiliy, being in court, and expressing his approbation of and assent to the said claim; it is allowed to be good. Let the auditor of this court make a statement accordingly of the money reserved on account of the rejected claims.
The auditor afterwards made and reported a statement accordingly, shewing a surplus to be paid to the heirs of Benjamin Brookes, which statement was, on the 21st of October, 1803, approved, and the proceeds directed to be applied accordingly.